Good morning. Before we start our normal proceedings of the day, we have the pleasurable occasion of a motion, and I will recognize Judge Rayner for that motion. Thank you. Amy, will you stand? So, when we first met, you were very, very persistent in your request to come and intern in my chambers. And, you know, I agreed only when I looked at your background, and I found that everybody screened that there's great potential in her. And you have met and exceeded my expectations, you know, first as an intern, then as working with me under your fellowship as a licensed lawyer past the bar in Florida. And you contributed to the work of my chambers and to that of this court. So now, I see you're headed for a career in IP law. Remarkable. So, I'm sure that you're going to be an outstanding practitioner, and I'm honored to move for your admission to this court. Now, judges, I move for the admission of Amy DeAnaya, who is a member of the bar in good standing of the highest court of Florida. I have knowledge of her credentials, and I'm satisfied that she possesses the necessary qualifications. Well, with consultation of Judge Mayer, I'd agree, and we have the pleasure of sharing the same floor with Judge Reyna. And therefore, our chambers also have the pleasure of dealing with the candidate, and very much enthusiastically endorse her admission. So, with that… Please raise your right hand, do you swear or affirm to report yourself to the attorney and counsel of this court, uprightly and according to the law, that you will support the Constitution of the United States of America? I do. Congratulations to both the bar and the United States Court of Appeals. All right, now for the work of the day. First case is 2012-1221, monolithic power versus O2 micro. Mr. Reynas, whenever you're ready. May it please the court, Edward Reynas on behalf of O2. I'd like to dedicate my time to three areas of major error. Vexatious litigation strategy without a finding of baselessness or bad faith. Litigation misconduct without a finding of culpable intent, and then any suggestion of a cover-up is clear error. And finally, a fee amount that's in direct violation of the FOX Supreme Court decision. So, the standard… Are you saying, counsel, based on what you just said, are you saying that we cannot find an exceptional case where I'll pull the award based on litigation misconduct and vexatious litigation alone? Either of those are lacking required elements, but if the court was in its wisdom to permit one or the other to go forward and affirm it, then there certainly would have to be a remand on the fee amount because there was no tracing of the fees to either of the two instances. So, each is in firm itself, and if only one failed, there would have to be a remand in any event for recalculation. So, you're saying that on the basis of just litigation misconduct or vexatious litigation, that we can uphold the award and not get into whether there's an objective recklessness or bad faith findings in this situation, in this case? I mean, I think each of them are in firm. I'm not sure I fully understand the question. If one of them is upheld, then each one could independently afford an exceptional case finding. And I'll explain that further as I go forward. I think the recent Supreme Court decision in Fox really lays out where we stand on these kinds of sanctions decisions. There's no doubt the trial judge has discretion. We're all familiar with the importance of a trial judge managing the courtroom. But as the court said, we don't want to pellet micromanagement on one hand. It's a very balanced opinion. On the other hand, it's only when the rules are called – the game is called by the right rules. That was the Supreme Court statement, and I think that's valid. So, discretion, okay, maybe even broad discretion, but the rules have to be in place. And let's start with vexatious litigation strategy, where there's clearly a violated rule. And that is the requirement of objective faithlessness. That comes right out of professional real estate. Well, that's what I think maybe Judge Raynor was asking about, so I'm a bit confused. I think I had the same question he did initially, and I thought he said there's litigation misconduct. We all agreed that under the rules of the game, if you have litigation misconduct, you don't need to involve the question of faithlessness or intent. That's it, right? Litigation misconduct is sufficient. Well, the only thing I'd say is if you're finding that an argument is sanctionable under litigation misconduct, you do need to establish objective faithlessness. So the argument has to be faithless in order for it to be sanctionable as a frivolous argument or whatever the issue is. And I think there needs to be also – I guess I'm still a little unclear. Maybe you cleared it up for Judge Raynor, but not me. Under Brooks, okay, Brooks is post-PRE. Right. I understand Beckman, you say, is pre-PRE, and that's obviously correct. Right. But they say misconduct during litigation, vexatious or unjustified litigation. And those seem to be separate from being able to find the separate category of bad faith plus faithless litigation, right? I mean, litigation misconduct in and of itself is sufficient. But what are the elements of it? I think there has to be bad – I mean, good faith litigation misconduct is an oxymoron to me. So I think there has to be bad faith, and I think if it's based on arguments, the arguments have to be objectively unreasonable. I mean, I'm happy to – there has to be some standard to what litigation misconduct – you can't just be a label with no requirements. Let me just – The way I view the case law is that objective baselessness, it's only considered in the absence of misconduct. And in our case of E.O.M.M.E.T., we held that misconduct alone is sufficient to support an exceptional award. And that's what Brooks said too, right? Litigation misconduct, absent misconduct in the conduct of litigation or blah, blah, blah, only if both. And then they – so they treat them as separate factors. Yeah, I don't disagree. I don't disagree with that. The question is what's misconduct? Misconduct can't be a standard list item. I think in Highmark – and I realize there's disputes about the standard of review in Highmark. But you can have misconduct without having baseless litigation, right? Yes. Okay. Yes, that you can. I'm just saying if it's – my only point maybe is with the miscommunication is if the finding of litigation misconduct is that it's a baseless argument, that the argument is frivolous, then you need baselessness. So it's a matter of what the type of litigation is. What's the case law that supports that assertion? I think Highmark supports that. So if the misconduct involves the advancement of argument, that that automatically invokes this two-pronged test of Seagate? I wouldn't put it – it's not really the two-pronged test. It's just it has to be objectively baseless. It can't be a – to be a frivolous argument, it has to have no basis. I mean, I don't mean to say more than that. So let me address under vexatious litigation strategy, there's no finding of objective baselessness that's required under professional real estate. That's straightforward, we believe. Nadia, vexatious litigation is considered sort of a component on the side of the equation which includes litigation misconduct, which alone without – does not require baseless litigation. Well, to me – Right? Not really, and the reason I disagree with that is really twofold. One is because vexatious litigation is under the supplemental authority. They're pointing to this automatic petitioning, is that you don't need to show that each of the cases is baseless if there's a thousand of them, right? That was the April 15 supplemental authority they put in which said PRE doesn't apply to the vexatious litigation theory if there's a series of cases. So that's this issue of at some point you bring so many cases that they don't have to each be objectively baseless. And they rely on USS POSCO and primetime. And this court's decision in Erbe, E-R-B-E, specifically says that that exception to the requirement of objective baselessness for vexatiousness doesn't apply. So I don't think – it would swallow the rule to say that once you invoke the word vexatious, all of a sudden the requirement of objective baselessness is gone. So are you saying that in order to have anything called vexatious litigation, there has to be an underlying finding that the litigation was itself baseless? If the vexatious litigation is based on the initiation of litigation, the filing of claims, they're definitely under professional real estate. The only – Her findings with regard to vexatious litigation were beyond just the filing. She recognized both sides had some filings. It was the conduct of litigation. It was incurring costs and then settling or agreeing to a covenant not to sue. So it was beyond just saying they filed the case and therefore there was vexatious litigation. I don't think so. I think it was filing of case and then the covenant not to sue. Other than this case, the only other covenants not to sue were regarding the 129 patent. One of the things that I'd want to highlight from the briefing is that in her prior decision in 2007, which is 2007 Westlaw 801-886. It's an important citation. Judge Wilkin was presented with the issue of they filed this lawsuit based on the 129 patent and then they've given a covenant not to sue. Which one are we talking about? The one that was filed in – 04, I believe it is. 04, okay. Okay. And that's the 722 patent. Right, and she said – she disagreed with the court saying now. She said that the professional real estate rule applies and it's not objectively baseless because O2 already won a trial on the 129 patent. And therefore, it's immune conduct. She already found the 129 – Yeah, but she's sitting here and, in fact, no one can disagree, and I'm sure you wouldn't. I mean, she had the litigation misconduct finding here. And with this vexatious litigation, she had a history and a context to put it in. I mean, if a judge had not referred to the context and the history, you would be here screaming that this ought to be considered in the context. So I don't think – I mean, if you go back – if you turn the clock back to everything that had happened until but not beyond 2004, I don't think we can necessarily use that to discount or obviate her finding of vexatious litigation six years later. Agreed. Agreed. But the only other covenant not to sue prior to this case was the 129 patent relative to that, and she found that immune in 2007. She found that – because she found professional real estate applied through that kind of vexatious activity, the filing and the covenant not to sue. I don't think you can say that the filing of cases of this kind is vexatious and sanctionable without an objective facelessness finding. I just – the law doesn't allow it, and the attempted exception I just don't think applies. Let me move to litigation misconduct. Do you find that vexatious litigation is a form of misconduct? Well, first of all, Judge Wilkin didn't find that twice. She didn't find it in this decision where she distinguished litigation misconduct, and she didn't find it in 2007 when she said professional real estate applied, and you have the great risk that the exception will swallow the rule. Maybe she did. I mean, I think she found that the dropping of the lawsuit was vexatious because it's only designed to avoid invalidity, and that that, in effect, also goes to stifling competition. I think giving a covenant not to sue to avoid invalidity isn't – wouldn't be vexatious. Not by itself, but maybe in the course of a trial. But we can't get to a shell game where each thing – where we look at each one. We say, well, it's the overall broad pattern of activity. She divided the two specific discrete elements. One was vexatious litigation activity. I've addressed that. I want to move on to the litigation misconduct. On litigation misconduct, she never found the bad faith in the testimony. It was error. He made erroneous testimony, and then she found that there was a cover-up, or as she put it, obfuscation. There absolutely was not. Within weeks after that, a brief was filed where they said, we do not contest that the data on the schematics must have been entered into the software by the prosecutor. But what about the – she went into the whole history of that, including the motion to strike the other side of the expert and the notion that there was some estoppel applicable because of the earlier litigation on the 722. It was really a whole slew of conduct. But just let's think of this on the motion to strike, which you just pointed, Your Honor. They filed the motion to strike after the expert report came forward and said, no, you guys are wrong. This isn't an automatic dating program. It's manual. The motion to strike was we admit that it's not an automatic dating program. We admit it was manually entered. Having an expert go through and prove that the documents show that is not a disputed issue under Rule 403. That's a very standard motion. I would make that motion. What about the collateral estoppel? Well, I mean the collateral estoppel argument was based on their statement that it's obvious from the entry on the date that there's a mistake because there's a comma. And it was sort of – I guess they were saying it's amateur the way it was done and there's a comma and no program would have done that. And the argument was if that was so obvious before, then they could have determined – To making that argument, all this stuff, whether you say it's a cover-up, whether you say it was bad faith, whether you say it was accidental or whatever you said, that information wasn't available in the earlier case with regard to the 722. So how could that possibly be collateral estoppel? Understood. With my limited time, I'd like to just get to the third and fourth issue. Although I think there's already an additional question. Oh, I'm sorry. I'm happy to answer questions, but I really want to get to the third issue. We'll let you get to the third issue. You can proceed. The third issue is in many ways the most important issue, which is that the $10 million sanction, even if you accept all of the things, and I would encourage reconsideration of some of those inclinations, but that the $10 million sanction violates the Fox case and Highmark and all causation laws. Did you argue Fox below? Yes. Point blank said, on the waiver point, we said, Section 285 is not intended to serve as a bonanza to compensate the party for work that would have been necessary absent misconduct. So is this whole argument dealing with the ITC award? Yes. Okay, so just let me clarify. This is just a clarification question. As I understood from the record, your objection, the ITC portion of this is $465,000. Am I correct about that? No. Almost all of the money of the sanction. Almost all of the money of the issue that's undisputed between the parties. It's about $8 million. Almost all, but she, at the end of the day, they asked for 50% of the ITC stuff, and she, at the end of the day, awarded 25%. So you think the ITC stuff was $32 million? No, Your Honor, you have it right. That's the block bill. There was block billed entries which related both to the ITC and the district court action, and for that she ordered 75% of this reduction. And that was $406,000? That was some small amount. Okay. Almost all of the discovery, there was like 70 depositions, Your Honor, something like that, 50, 70 depositions. Almost all of that was taken in the ITC. Counsel won't oppose this. It's undisputed in the briefs. Almost all of the sanction award is based on the work done in the ITC in discovery. Wasn't there stipulation with the court and among the parties to use the discovery and the ITC proceeding in order to save costs or not have to duplicate depositions? Yes, it was clearly dual use. But that's exactly Fox, Your Honor. This is a very straightforward argument. Fox said if there are two claims and one's legitimate and one's not, you don't get recovery for the illegitimate claim if the work would have had to be done for the legitimate claim. That's exactly what we have here. There's no distinction whatsoever. And it's the vast majority of the award. It's about 90% or whatever the exact amount is. Fox is based on a civil rights statute, correct? The statute, 1988, which has been relied on by this court over and over again. And that's documented in our briefs. There's no way Fox doesn't apply to this case. This is just a very simple, straightforward issue. The ITC has its own rules for sanctions. They're broad. They're broader than 285. And there's no way, but for causality, but for this action in a district court, the fees would have been incurred anyway in the ITC. If they thought the ITC was improper, they should have brought a motion there. Now, let me just be clear on just one of your questions on the waiver. Yes, let's talk about it. I mean, I know you, as supplemental authority, put Fox in. But did you, in the underlying papers even before that, argue a but-for causation standard? Absolutely. JA9543 was the last quote where he said, 285 is not intended to serve as a bonanza that compensates a party for work that would have been necessary, absent the misconduct, and they are certainly not intended to compensate for work performed in an entirely different legal proceeding in a non-Article 3 court. That is, the ITC work would have happened anyway. That's in the original sanction motion. You can also look at JA5291 is the original sanction motion. I think that's the one where they said the ITC staff is gatekeepers. You shouldn't be compensating for the ITC. There is an argument about bootstrapping ITC fees. That's at JA5291 and JA9397. The heading in the brief at JA9534 is, only fees caused by and traced to the alleged exceptional behavior should be recoverable. Caused by. There's very strict rules in the Northern District of California, and I'm not one that can play with those. Fox says you cannot get fees for bringing a frivolous claim. That's what the Fox case is about, and we don't have a frivolous claim issue in this case. We certainly don't have that. We don't have any of that. But the point being that whatever the wrongdoing was in the district court, there's no showing that it took place in the ITC. Judge Wilkins didn't even attempt to show that it happened in the ITC. This is a straightforward, syllogistic, two-step logic from Fox v. Vice. We didn't waive it. We submitted it as supplemental authority. We're not allowed to put argument in in the Northern District of California. We put a parenthetical that made clear it was causation. We had causation in the original motion. We argued that the ITC was independent in the original motion because it has its own rules. You cannot recover ITC fees, dual use. Admittedly, dual use. That's exactly Fox v. Vice. Their primary argument isn't any of these arguments. In any case in which you're using duplicative, which is a good idea, and I appreciate both parties. Everybody agreed to it in the district court. So you can never get sanctions that recover those fees. Even though it's clear, if the ITC proceeding wasn't going on, you would have had these fees incurred. Exactly right. So you're off the hook for all of those fees because of this circumstance? That's the argument that the other side raises. Not any of these other things. That's their argument on the merits. And the answer to that is that's Fox v. Vice. You could make the same argument about Fox v. Vice. So if they didn't bring the non-frivolous claim, then they would have recovered for their fees incurred in the frivolous claim. But the presence of the non-frivolous claim somehow insulates the frivolous claim because the happenstance is dual use. There's no distinction. That very same argument applies immediately and directly to Fox v. Vice itself, where the unanimous court found to the contrary. Okay. I think we have your argument. We'll restore three minutes of rebuttal. Thank you, Your Honor. And because that puts us like five or six minutes over, if you need that additional time, don't feel compelled to use it. But if you need it, it will be there for you to keep the season. May it please the Court, Dan Bagatelle on behalf of Monolithic Power Systems. With me is Dean Dunleavy, who is counsel in both the district court and the IDC. O2 is arguing that the district court committed clear error in finding this to be an exceptional case, but it would be a very sad commentary on our patent litigation system if this court were to reverse and find this to be an ordinary, unexceptional case despite the materiality of it. Well, I think we can understand that. Can you address kind of the point that I think Judge Rayn and I were somewhat troubled by, and that is this category of PRE and the baseless plus bad faith, and then litigation misconduct, I think we're in agreement that that's separate and distinct, and if there's litigation misconduct, you don't need the other stuff. But in this context, she didn't rely exclusively on what she put under the heading of litigation misconduct. She also relied, she coupled that with vexatious litigation. So what is your view of where vexatious litigation falls? Well, okay, there was a mistaken premise here that the district court needed to require objective baselessness to find a vexatious litigation. The Grobman of vexatious litigation is an intent to use the litigation process to harass. It's analogous to the distinction between abusive process and malicious prosecution. They're distinct torts. Vexatiousness, again, does not turn on the lack of merit to student abuse of the process. This court's case has recognized that distinction. Beckman says so. So is it a bad faith thing? Is it the bad faith component? Well, it's misuse of litigation process. I would agree there would probably need to be a bad faith component because someone's abusing the litigation process for an improper purpose. But this court in Tall Tech, which is a post-BRI case, held that. If we get into bad faith, does that throw us into an objective baselessness? No, because the inquiry is not about the baselessness of the claim. It's about the strategy and the tactics used. You're talking about an allegation. I mean, aren't you looking at the argument itself and determining if you're going to determine whether that's brought in bad faith or not, then don't you have to look at the intent behind that argument? If the Grobman is that the claim was baseless, then this court's decision in Brooks Furniture says it has to be objectively baseless plus brought in subjective bad faith. If the Grobman is that the litigation process has been abused, that does not turn on objective baselessness at all. In fact, as you pointed out, Judge Prost, that's clear from Brooks Furniture itself. Yeah, but it's not entirely. I mean, there's a little confusion perhaps under we all know litigation is conduct and whether therefore vexatious litigation strategy, which you called it, not just vexation litigation, whether that comes under the rubric of litigation with conduct or what? Well, I think actually if you look at Tall Tech, they referred to it there as abusive litigation. The district court used both of those terms, by the way, abusive and vexatious litigation in her opinion. Now, I will acknowledge that the district court, for purposes of convenience, had headings marked litigation misconduct where she was talking about the false testimony and the cover-up and then she also referred to vexatious litigation, but that was for convenience in discussing them. This court has always considered vexatious litigation to be a form of litigation misconduct and the Supreme Court's decision in professional real estate investors didn't purport to overrule any of that. It certainly didn't purport to eliminate the tort of abusive process either. And let's get to the facts here because the question really is did the district court commit clear error in finding this to be a vexatious litigation strategy? And Beckman tells us, by the way, that you don't fly spec every individual ground. You look to see whether the record as a whole will support the finding. And it did. We had, in this case, we had six litigations brought by O2, all of which they lost. They continually harassed MPS and its customers for a decade, in some cases driving customers, for example, one of the other defendants in this case, to agree to withdraw and not purchase from MPS anymore. And the district court sat in the trenches, saw this series of cases, and she drew a conclusion about what O2 was up to. O2 says we only filed a covenant not to sue at the end. We gave up. You should be praising us for that. Well, that's one possible inference. But based on 10 years of experience, she drew a different conclusion. It wasn't simply one covenant not to sue. Your opponent looks at that and says that's actually a good deed. We narrowed the litigation. We shared an issue that's non-germane. If there had been one single covenant not to sue, perhaps at the beginning of the case, when they gave up on the 519 series of claims when they were faced with an insuperable on-sale bar problem, that might be an inference. But the district court saw this series of cases, saw the series of covenants not to sue. That's the tip of the iceberg, the covenants not to sue. She realized what was going on here, having sat through five straight cases, that this was ongoing harassment of NPS and her customers. I don't think this court is well-placed to second-guess that conclusion. Can you turn to the second part of that, the so-called Fox argument? Oh, the Fox v. Weiss argument? Yes, and just one clarify for me, because I've kept seeing this $465,000 number in connection with the ITC stuff. Is there any disagreement between you and your friend Mr. Reines about the bulk, the vast majority of this $10 million reward being the fees incurred also in connection with ITC? I can't quantify it, but I would agree that most of the award would involve discovery. It usually is the biggest expense. The discovery was done for both cases? The discovery was done by both cases, by order of the district court and by, essentially, no objection from the parties. If that discovery, however, would have been done for the ITC case, irrespective of what was going down here before the district court, how is that okay under Fox? Well, there are two issues. One is the waiver issue, which I would like to come back to, but I will answer your question about why is this not a Fox v. Weiss type of situation. You can start with the waiver. Okay, let's start with the waiver. I think we should walk through three papers that O2 filed. First was the opposition to our original motion, which is at JA 5291-92. And the argument in that paper was, essentially, what I call a captioning argument, that the fees were actually incurred in the ITC and the district court didn't have authority to award fees in the ITC, and the ITC couldn't award fees under Section 285 because Section 285 doesn't apply to the ITC. That's basically not taken here. And the answer to that was that it was taken here by court order that all the discovery in the ITC was applicable to the district court. It wasn't a buck four argument at all. Was there any objection to that court order? Excuse me? Was there any objection by any of the parties to the court order? No, no, she ordered it. We filed the original district court declaratory judgment action. O2 then responded with a sort of counter-complaint in the ITC and tried to get her to stay the district court litigation. And she said, I'm not staying the first file litigation. There's damages at issue. All the issues are at issue here. The patents are at issue here. I'm going forward, but I'll consolidate discovery so that you guys don't waste your time and have to duplicate the depositions. Nobody disagreed with that. Was the motion of O2 to stay the district court proceeding so as to conserve cost and not have a duplication of discovery? Like it's better to let's do the ITC proceeding first so that we're not duplicating discovery? I think that's part of it. The motion, I believe it's in the joint appendix. But certainly everyone agreed it would make no sense to duplicate the discovery in the two cases. You're dealing with the same inventor depositions, the same experts. There are going to be some unique issues, domestic industry and that sort of thing. But the main merits issues were going to be the same. So that's the first motion. Now the district court finds the case exceptional and then she says to quantify the fees. And O2 objected to MPS's quantification of the fees. This is at JA9534 and forward. There were two arguments in that brief that were relevant here. First was a but-for argument but it had nothing to do with the ITC. Their argument was we only owe fees for the five days after the independent expert rendered his opinion and then we gave up. So blame us for five days but don't blame us for anything else. That was a but-for argument. It had nothing to do with the ITC. There was an argument related to the ITC and that was don't make us pay for things like domestic industry that are limited to the ITC. Those were distinct arguments. The second argument was not a but-for argument. Mr. Rodin, I think I may be incorrect on this. I jot it down. He cited us to 9543 which I guess was in the midst of what you were just pointing out. That is the conclusion to that brief which is a summary of the two arguments that went before. If you look, I encourage you to read the entire brief. If you look at 9534-36, that's the tracing argument and they say the vexatious conduct was limited to five days and she said no. The argument, my conclusion is that you had misconduct throughout the case. And then the second argument is at 9536-9538 in which they argued that non-discovery, for example domestic industry work, shouldn't be recoverable and we agreed with that and to the extent that we had some mistaken entries, we took them out. So what O2 was arguing were two arguments. They have a nice conclusion that they try to say that O2 raised a more general argument about fees for dual purposes in the ITC and district court. It's just not made in that brief. And of course the supplemental citation just cites it. And what was the date of this brief? The date of the brief, May 27, 2011. It's at JA 9522-44. Was that before or after FOX was decided? Because FOX was a 2011 case. It was before and then O2 filed a supplemental citation to FOX v. Vice on the 16th of June 2011. Yes, so it couldn't have very well been making arguments with respect to FOX before FOX was decided. Well, they couldn't have made, you can't waive a case. You can waive an argument. And O2 did cite FOX v. Vice in the supplemental citation, did not seek leave to make a new argument. They simply said FOX v. Vice supports our tracing arguments that we made previously, which were not the arguments that it's making now. It's a different argument. It's a creative argument, and I can explain to you why I think it's wrong. If you'd like me to address the merits of the FOX v. Vice argument. As we observed, FOX did not address the parallel case problem. It addressed the problem of frivolous and non-frivolous claims in the same case. That's the run-of-the-mill situation. If we had that situation in this case, it might well apply to patent cases. I'm not trying to distinguish it as simply a civil rights case. But it's not the scenario. It's a parallel litigation problem that the Supreme Court didn't face. And what O2 is trying to argue is, simply because the ITC has no Section 285 authority, anything they do in the ITC and the district court, it's scot-free. It would be a windfall to misbehaving plaintiffs, and the Supreme Court certainly didn't endorse that. Indeed, avoiding windfalls was part of the reason for the holding in FOX v. Vice. So it's true that the ITC doesn't have Section 285 authority. We could not have filed a Section 285 motion in the ITC. All the ITC, as far as I know, has is Rule 11 authority. This type of misconduct doesn't neatly fall into a baseless paper or some sort of particular issue. This was false testimony through a series of cases, including this case. This case involved a series of baseless litigations. That doesn't fall into the Rule 11 rubric. It's not a question of double recovery. In fact, the recovery here was less than single recovery. We couldn't get these fees in the ITC. We applied for it in the district court because the fees were related to the district court action. We got less than 100% recovery. Well, what if the ITC had granted fees and accounted for the discovery? Would the district court then be able to go back and use those costs as a basis for fees? Well, actually, the ITC case was over by the time the discovery. But let's take the hypothetical. No, I don't think we could get double fees, and we never claimed double fees. We only sought fees in one jurisdiction. There could be some sort of comity issues if the ITC said everything was copacetic and the district court thought otherwise. Then you might have some sort of comity issue, but there was no such issue in this case. It was really a question of the district court's discretion as to how much of the fees were fairly related to work in her court for her case. But there's something to be said as a policy matter for the other argument, is there not? I mean, there's a determination made that 285 doesn't apply to ITC. And if, in fact, all of the costs that we're talking about here would have been incurred in any of this, and we're all agreed on that, why isn't there some heft to Mr. Reins' argument? Well, I don't think there's been any policy determination about Section 285, Section 284, Section 282. There are various provisions of the Patent Act that simply don't naturally apply to cases under 19 U.S.C. 1337. Right. But the point is the same, which under 1337, the ITC proceeding, if this had been stayed and the ITC proceeding had gone through and therefore none of this discovery was ever transferred over, clearly those amounts would have been incurred irrespective of what went down in this litigation, correct? That is true. That is not the scenario. The scenario here was we filed this case first. They tried to file the ITC action in an attempt to deflect the dispute action. I know, but the point is that these fees would have been incurred irrespective of whether there was horrendous litigation misconduct or no misconduct. Some of them would and some of them would not. But I would grant you that many of the fees in the case were incurred for both purposes. And the question is, can they avoid liability simply by having filed an ITC action in which Section 285 doesn't directly apply? I don't think that the statutory loophole of having no Section 285 deprives the District Court of the power to declare the case before her exceptional and shift fees. Would your argument be different had O2 objected to using the discovery costs in the ITC proceeding? Honestly, no, because the District Court clearly had the authority to order discovery consolidated, and once she did, it became discovery in this case. So whether O2 objected or not, you think that's immaterial? Well, they didn't object, but I don't think it's really critical because the District Court was well within her discretion to order that the discovery be combined with the two cases. And O2 certainly hasn't appealed that termination. But I'll get back to the policy issue because I think there are circumstances where a simple but-for causation test doesn't make sense. And I learned this in first-year tort law, and it's actually in all the Horn books. If I have a mountain cabin and A starts a forest fire that burns down my cabin, but it's also combined with a forest fire negligently set by B, which would have burned down my forest cabin. Well, A says, well, but for my misconduct, your cabin would have been burned down by B. And B says the same thing, and they both say you're off the hook. And tort law has never recognized that defense. In fact, it's quite clear. You can look at it in the beliefs in the restatement and certainly in the Horn books recited dobs on torts and remedies. In that case, you don't apply a simple but-for causation test. You look at a substantial factor test because it leads to unjust results. And the Supreme Court was not considering that scenario in Fox versus Vice. It just didn't deal with parallel proceedings at all. And I found no authority that extends Fox versus Vice to the parallel proceeding situation. And I think it would be very bad policy if you said that simply by virtue of having a parallel ITC proceeding, virtually nothing in the district court is compensable. That would be terrible law. I see I'm over my time. Let me first address on waiver. I mean, the heading at 9534 is only fees caused by and trade to the alleged exceptional behavior should be recoverable. How else do you make a but-for causation argument? And then we followed the rules. We had three rounds of briefing on the fee amounts. And to make a fourth round, when there's a system for providing new authority, it says, we submitted the new authority, is it JA-10-0486, and said the trial court must determine whether the fees requested would not have accrued but for the frivolous claims, citing Fox, and says this decision supports the arguments made throughout our opposition. So to find a waiver on this, when we brought Fox to the court's opinion, the court considered Fox. So Judge Wilkin read Fox. We clearly objected to the ITC on the grounds that it has its own rules. That's all over the papers. I don't even think that's denied. To find a waiver would be pretty hard-hearted in this circumstance. The court had it. She read it. She distinguished it on the grounds that you heard now, that somehow frivolous case versus litigation misconduct is meaningful. There's nothing meaningful about that distinction. But the Supreme Court decision is wise and simple. If you would incur fees anyway for something legitimate, you don't get recovery just because there is parallel illegitimate. Now to the point that Judge Rankin has made a couple of times about, well, didn't you agree to the consolidation? Again, I feel it's a little bit of a betwixt and between, whichever way I move. So the argument is if it's a separate proceeding that the Fox argument is weaker. That makes no sense. The fact that there's a separate proceeding, which itself is bona fide, where they could have sought fees. There's a sanction statute. It's broader. It's got vexatiousness. It's got arguments without evidence. It's got everything in there. They could have moved in the ITC if they'd want to. There's no debate about that. They didn't. The fact of the respect for fees in another institution makes it more compelling than a case with two claims in one case. The fact that we agreed to consolidate them, which is sort of common sense, to me eliminates the argument that, well, they're two separate proceedings, so therefore Foxy Vice doesn't apply. Either the fact that they're consolidated means that they're like Foxy Vice or it means it's further distant from Foxy Vice, in which case it's even more compelling for us. There's no but-for causality whatsoever in this situation.  One is there were 60 depositions taken in ITC. Everyone knows that ITC is wide open on discovery and the district court isn't. District court, you've got a limit of 10 depositions. So by so much of the discovery probably wouldn't have happened. Maybe it would have, but by the normal rules of district court, this $8 million wouldn't have happened. It was only because it was being dual-use for the ITC. So to get the benefit of the broad ITC discovery and then argue that all of that, that would have been taken anyway, is somehow a cover-up. Yeah, but don't we-wouldn't we give enormous deference to the district court in evaluating that because she has the sense for what in the depositions counted as fraud, right? I mean, that's the standard. Yeah, I'm not really-that's not really the central point. The central point is that by having a separate proceeding, it makes it more compelling. That if there's a legitimate proceeding under an appropriate tribunal in which the cost would have been incurred, there's no basis for the budget work causality in the other court. Okay. We have your argument. We thank both counsel. The case is amended. Thank you.